IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

IN THE ROCK HILL DIVISION

| | |
|---|---|
| D.R., a minor child, by and through his Mother and Guardian, Yelanda McCray,<br><br>             Plaintiff,<br><br>vs.<br><br>Clover School District a/k/a York County School District 2; Clover School District a/k/a York County School District 2 Board of Trustees; Frank Pendleton, Individually and in his Capacity as a Member of the Board of Trustees; Jack Grier, Individually and in his Capacity as a Member of the Board of Trustees; Joe Gordon, Individually and in his Capacity as a Member of the Board of Trustees; Sherri Ciurlik, Individually and in her Capacity as a Member of the Board of Trustees; Mack McCarter, Individually and in his Capacity as a Member of the Board of Trustees; Barbara Parish, Individually and in her Capacity as a Member of the Board of Trustees; Melanie Wilson, Individually and in her Capacity as a Member of the Board of Trustees; Mychal Frost; Marc Sosne, Individually and in his Capacity as Superintendent of Clover High School; Mark Hopkins, Individually and in his Capacity as Principal of Clover High School; Maurice Johnson, Individually and in his Capacity as Assistant Principal of Clover High School; Sheila Huckabee, Individually and in her capacity as Assistant Superintendent of Clover High School; John Devine; Jack Ford; Robbie Wiggins; H.W., M.C.P., J.C.C., K.S.J., S.A.L., C.R.R., T.M.C., Z.A.S., J.T.L., Minors; John Doe #1, John Doe #2, and | Case No.:  `0:12-569-CMC`<br><br><br><br>**COMPLAINT**<br><br>**Jury Trial Demanded** |

John Doe #3,

                        Defendants.

COMES NOW Plaintiff, D.R., by and through his Mother and Guardian, Yelanda McCray, who, complaining of Defendants, alleges and states:

## THE PARTIES

1.      Plaintiff D.R., by and through his Mother and Guardian, Yelanda McCray, (hereinafter "Plaintiff"), is a resident and citizen of York County, South Carolina.

2.      Yelanda McCray is the biological and custodial parent of Plaintiff and minor child D.R., who is a resident and citizen of York County, South Carolina.

3.      Defendant Clover School District a/k/a York County School District 2 is a political subdivision of the State of South Carolina.

4.      Defendant Clover School District 2 Board of Trustees is a political subdivision of the State of South Carolina.

5.      All remaining Defendants, upon information and belief, are citizens and residents of the State of South Carolina.

6.      Defendants Clover School District a/k/a York County School District 2, Clover School District a/k/a York County School District 2 Board of Trustees, Frank Pendleton, Individually and in his Capacity as a Member of the Board of Trustees, Jack Grier, Individually and in his Capacity as a Member of the Board of Trustees, Joe Gordon, Individually and in his Capacity as a Member of the Board of Trustees, Sherri Ciurlik, Individually and in her Capacity as a Member of the Board of Trustees, Mack McCarter, Individually and in his Capacity as a Member of the Board of Trustees, Barbara Parish,

Individually and in her Capacity as a Member of the Board of Trustees, Melanie Wilson, Individually and in her Capacity as a Member of the Board of Trustees, and Mychal Frost will hereinafter be referred to as the "School District."

7.      Defendants Marc Sosne, Individually and in his Capacity as Superintendent of Clover High School, Mark Hopkins, Individually and in his Capacity as Principal of Clover High School, Maurice Johnson, Individually and in his Capacity as Assistant Principal of Clover High School, Sheila Huckabee, Individually and in her capacity as Assistant Superintendent of Clover High School, John Devine, Jack Ford, Robbie Wiggins, and John Doe #1 will hereinafter be referred to as the "School Employees."

8.      Defendants H.W., M.C.P., J.C.C., K.S.J., S.A.L., C.R.R., T.M.C., Z.A.S., J.T.L., John Doe #2, and John Doe #3 will hereinafter be referred to as the "Upperclassmen."

## JURISDICTION AND VENUE

9.      The District Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, §§1343(a)(3), (4) and §1367, and 42 U.S.C. §1983.

10.     Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over the remaining claims, as they are so related to the claim in the action within original jurisdiction that they form part of the same case or controversy.

11.     This Court has personal jurisdiction over all Defendants because they are either political subdivisions of the State of South Carolina or residents of the State of South Carolina.

12.     Pursuant to 28 U.S.C. § 121(b), venue is proper in this judicial district, as a substantial part of the events or omissions giving rise to the claim occurred within York County, which is within the District of South Carolina in the Rock Hill Division.

**JURY DEMAND**

13.    Plaintiff demands a jury trial as to all matters raised in this Complaint.

**GENERAL ALLEGATIONS**

14.    The Mission Statement of the Clover School District is "Clover Schools will prepare every child for a successful, productive and responsible future."

15.    The "vision statement" of the School District is: "The Vision of the Clover School District, York 2, is to be the best school district in South Carolina all areas. We will demonstrate the very best in delivering engaging instruction to our students, leading our schools administratively, interacting positively with our community, and achieving the highest levels of student success both academically and in extracurricular activities. An excellent school district is excellent at everything."

16.    The School District adopted so-called "District beliefs" to ensure the families of students and the general public that it is concerned about the safety and well-being of its students.

17.    A "District belief" of the Clover School District is "The purpose of school is to design meaningful experiences where students acquire knowledge and skills to successfully explore the challenges of today and tomorrow."

18.    The purpose of Clover High School was to design meaningful experiences where Plaintiff could acquire knowledge and skills to successfully explore the challenges of today and tomorrow.

19.    A "District belief" of the Clover School District is "The responsibility of leaders is to provide the vision, time, resources, and collaborative environment that promote continuous improvement."

20.    It was the responsibility of the School District to provide the vision, time, resources, and collaborative environment that promoted continuous improvement.

21.    A "District belief" of Clover School District is "The focus of educators is to design engaging, meaningful work for all students and ensure that they learn to their highest potential."

22.    School District was to design engaging, meaningful work for Plaintiff to ensure that he learned to his highest potential.

23.    School Employees were to design engaging, meaningful work for Plaintiff to ensure that he learned to his highest potential.

24.    A "District belief" of the Clover School District is "The role of the school, parents, and community is to create a safe and supportive environment for all students to learn and thrive."

25.    School District owed Plaintiff a duty to create a safe and supportive environment for Plaintiff to learn and thrive.

26.    School Employees owed Plaintiff a duty to create a safe and supportive environment for Plaintiff to learn and thrive.

27.    On May 17, 2010, the School District adopted a policy regarding harassment, intimidation or bullying that stated:

> "Harassment, intimidation, or bullying" means a gesture, an electronic communication, or a written, verbal, physical, or sexual act that is reasonably perceived to have the effect of: (a) harming a student physically or emotionally or damaging a student's property, or placing a student in reasonable fear of personal harm or property damage; or (b) insulting or demeaning a student or group of students causing a substantial disruption in, or substantial interference with, the orderly operation of a school.

28.     School District owed Plaintiff a duty to prevent him from being harassed, intimidated, or bullied.

29.     School Employees owed Plaintiff a duty to prevent him from being harassed, intimidated, or bullied.

30.     Upperclassmen owed Plaintiff a duty to not harass, intimidate, or bully him.

31.     Furthermore, the purpose of the School District adopting the policy regarding harassment, intimidation or bullying was "To establish the basic structure for maintaining a safe, positive environment for students that is free from harassment, intimidation or bullying."

32.     School District owed Plaintiff a duty to maintain a safe, positive environment for him at school that was free from harassment, intimidation, or bullying.

33.     School Employees owed Plaintiff a duty to maintain a safe, positive environment for him at school that was free from harassment, intimidation, or bullying.

34.     A school employee, student, or volunteer who witnesses, or has reliable information that student has been subject to harassment, intimidation, or bullying shall report the incident to the appropriate school official.

35.     School Employees have a duty to immediately report harassment, intimidation, or bullying to appropriate school officials.

36.     Hazing is the wrongful striking, laying open hand upon, threatening with violence, or offering to do bodily harm by a superior student to a subordinate student with intent to punish or injure subordinate student, or other unauthorized treatment by the superior student of a subordinate student of a tyrannical, abusive, shameful, insulting, or humiliating nature.

37.     School District owed Plaintiff a duty to prevent him from being hazed while at school.

38.     School Employees owed Plaintiff a duty to prevent him from being hazed while at school.

39.     On November 15, 1993, the School District adopted a policy regarding sexual harassment that stated:

> Sexual harassment may include but is not limited to verbal harassment, including epithets, sexually offensive comments or slurs; physical harassment; physical interference with movement or work; or visual harassment such as sexually offensive cartoons, drawings or posters.  Sexual harassment is prohibited against members of the same sex as well as against members of the opposite sex.

40.     School District owed Plaintiff a duty of care to prevent him from being sexually harassed.

41.     School Employees owed Plaintiff a duty of care to prevent him from being sexually harassed.

42.     On October 24, 1994, the School District adopted a policy regarding interrogation of students by the police that stated: "When law enforcement officers find it necessary to question students during the school day, the school principal or his/her designee will attempt to contact the parent or legal guardian and request his/her attendance."

43.     School District and School Employees breached this policy with regards to Plaintiff.

44.     In direct opposition to its Mission Statement, vision statements, district beliefs, and expressly adopted policies, the School District has allowed and, indeed, by its actions and omissions actually has encouraged a culture of physical cruelty to exist and thrive at Clover High School.

45.     Contrary to its actions, the School District should provide an inviting, safe, and secure educational infrastructure for its students, however, as set forth herein and otherwise it has failed to provide an inviting, safe, and secure education infrastructure for Plaintiff.

46.     Plaintiff was a member of the junior varsity football team for Clover High School and a student at Clover High School.

47.     Plaintiff enjoyed playing football and attending classes at Clover High School.

48.     As stated, Clover High School has a long tradition of upperclassmen hazing younger members of the varsity and junior varsity football team.  Plaintiff was unaware of this tradition when he made the decision to play football.

49.     In fact, hazing is part of the culture of the Clover High School football team and as Clover High School Superintendent Marc Sosne stated, "it has been going on for years."

50.     The School District was aware, or should have been aware, of this culture that existed at Clover High School as a part of some bizarre right of initiation or passage and failed to take steps to prevent, deter or remedy the conduct.  Instead, it hired and retained employees who fostered the culture of hazing.

51.      On or about September 21, 2011, Plaintiff became a victim of this culture of upperclassmen assaulting younger athletes when he was grabbed by the Upperclassmen and was carried into a locker room.

52.     While he was in the locker room, Plaintiff was physically assaulted by the Upperclassmen who punched and kicked Plaintiff while he was being physically restrained.

53. Furthermore, while they physically restrained Plaintiff, the Upperclassmen pulled Plaintiff's pants down and attempted to, and in fact did, physically assault and batter Plaintiff with a broom stick.

54. In addition to the physical injuries Plaintiff suffered at the hands of the Upperclassmen, Plaintiff was embarrassed and humiliated by the assault to the extent he was too ashamed to report the incident when it first occurred.

55. While this incident was occurring, School Employees who should have been supervising the conduct of the Upperclassmen, failed to do so.

56. After this harsh, abominable, painful and humiliating incident occurred, the Upperclassmen began bragging about their depraved conduct to their peers at school.

57. This deviant, tolerated and encouraged culture at Clover High School allowed and even condoned the Upperclassmen's open bragging about assaulting an underclassmen to other students and in front of faculty members and employees of Clover High School.

58. After weeks of the Upperclassmen bragging about what they had done to Plaintiff, a teacher finally reported the hazing incident to school administration on October 5, 2011.

59. District policy and the laws of the State of South Carolina require school administrators to contact law enforcement authorities immediately upon notice that a person is engaging or has engaged in activities on school property or at a school sanctioned or sponsored activity which may result or results in injury or serious threat of injury to the person or to another person or his property as defined by local board policy.

60. Contrary to their required obligations and rather than immediately notifying law enforcement, School Employees conducted an independent investigation into the hazing

incident, which included taking written statements from several witnesses who saw the incident occur. School Employees did not provide written statements during this "independent" investigation.

61.    At the conclusion of the investigation, School Employees finally notified law enforcement of the incident on October 6, 2011.

62.    Law enforcement began an investigation into the incident several weeks after the incident occurred.

63.    During the "independent" investigation conducted by the School Employees, the statements given by the Upperclassmen corroborated Plaintiff's claims regarding the incident. However, when law enforcement finally began to take statements, the Upperclassmen began to change their story to lessen their involvement and minimize the extent of the incident.

64.    For example, on October 6, 2011, M.C.P. gave a statement to School Employees that stated: "When I looked back over into the bathroom [Z] was smacking [Plaintiff's] butt pretty hard. [T] was holding him down when [Z] was smacking [Plaintiff] and I believe [J.C.] was also holding him down. [T] had grabbed a broomstick and that's when I went into the bathroom to see what was going on now because [Plaintiff] had gotten pulled into shower. I saw [T] poking the broomstick into [Plaintiff's] butt, with [Plaintiff's] pants pulled a little down then I went back to my locker and sat down." However, on October 13, 2011, M.C.P. gave a statement to law enforcement and changed his story: "Now that I have read my statement I am not positive [Plaintiff's] pants were pulled down when [T] was poking [Plaintiff] with the broomstick."

65.     Once this incident was reported to law enforcement, Defendants engaged in a massive cover-up to conceal the true events that occurred.  Upon information and belief, the School District and School Employees "coached" the Upperclassmen and other students to downplay or deny the incident.

66.     Defendants have attempted to discredit Plaintiff and have made improper statements regarding his credibility in an attempt to conceal their dastardly and foul conduct.

67.     Upon information and belief, the Upperclassmen and School Employees were "coached" as to how to respond to questions regarding the incident in order to downplay its severity and to discredit Plaintiff.

68.     Furthermore, the School District and the School Employees held numerous press conferences and made numerous public statements in an attempt to discredit Plaintiff.[1]

69.     The School District failed to protect Plaintiff after the incident was reported to law enforcement and he was subjected to threats from the Upperclassmen.

70.     Since the incident occurred, Plaintiff has been forced to transfer to another high school and endure humiliation and the separation from his friends and fellow classmates.

71.     At all times relevant hereto, the School District was responsible for the policies, practices, supervision, implementation and conduct of all matters pertaining to Clover High School and were responsible for the appointment, training, supervision, and conduct of all relevant personnel working at Clover High School.  In addition, these Defendants were responsible for the safety of the students at Clover High School, and for ensuring that Plaintiff received the protections and privileges he was entitled to under the Constitution and the laws of the United States and South Carolina.

## CLAIMS FOR RELIEF

### FOR A FIRST CAUSE OF ACTION
### (Violation of Constitutional Rights – 42 U.S.C. § 1983 as to
### School District and School Employees)

72.     The allegations set forth in the paragraphs above are incorporated as if repeated herein verbatim.

73.     School District and School Employees are "persons" pursuant to 42 U.S.C. §1983.

74.     Plaintiff has constitutionally protected rights pursuant to the United States' Constitution and South Carolina state Constitution.

75.     Plaintiff has been deprived of his constitutional rights and such deprivation was done pursuant to a governmental custom, policy, ordinance, regulation or decision.

76.     The governmental custom, policy, ordinance, regulation or decision was the proximate cause of the deprivation of Plaintiff's Constitutional rights.

77.     The actions of School District and School Employees constitute a deprivation of Plaintiff's rights under the laws of the United States.

78.     Plaintiff was forced to endure multiple instances of physical assault as described above.

79.     School District and School Employees were aware of, permitted, endorsed, encouraged, condoned, and facilitated harsh assaults upon younger athletes and/or enlisted student athletes as their instruments to engage in attacks on Plaintiff.

---

[1] The Solicitor for the Sixteenth Judicial Circuit held a press conference and announced publicly that there should be no criminal charges brought in this matter.  Plaintiff anticipates additional defendants to be added in this matter but is unable to identify them at this time.

12

80.    School District and School Employees were aware of the depraved tradition that existed at Clover High School.

81.    School District and School Employees failed to take proper remedial action despite their knowledge of the hazing tradition at Clover High School and had downplayed and continue to downplay the pattern of assaults by consistently referring to them as "horseplay" rather than candidly calling these actions what they are - depraved.

82.    School District and School Employees have exhibited a deliberate indifference to Plaintiff's Constitutional rights.

83.    School District and School Employees maintained a policy or custom that caused the deprivation of Plaintiff's rights.

84.    As a result of the direct actions of School District and School Employees and as a result of the deliberate indifference of School District and School Employees, Plaintiff's Constitutional rights were violated.

85.    The unlawful actions and omissions of School District and School Employees were performed under color of state law, regulations, customs, and/or usages.

86.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and will continue to suffer damages, including, but not limited to:

        a.  Physical, emotional and psychological pain and suffering;

        b.  Mental anguish;

        c.  Fright and shock;

        d.  Denial of social pleasures and enjoyment;

        e.  Embarrassment, humiliation, and mortification;

f.  Economic damages, including, but not limited to medical and psychological care;

g.  Loss of enjoyment of life;

h.  Other damages that may be revealed or discovered during the pendency of this litigation.

87.   As a result of Defendants' conduct, Plaintiff is entitled to an award of actual damages from a jury.

88.   Furthermore, Plaintiff is entitled to an award of punitive damages from a jury based upon the willful and wanton conduct of Defendants.

**CLAIM TWO**
**(Gross Negligence as to School District and School Employees)**

89.   The allegations set forth in the paragraphs above are incorporated as if repeated herein verbatim.

90.   Defendants owed a duty of care to Plaintiff.

91.   Defendants breached that duty and failed to exercise the slightest care in the following particulars:

a.  Failing to provide adequate supervision of the student-athletes on the football teams;

b.  Failing to ensure that the health, safety and well-being of the student-athletes on the football teams were protected at all times;

c.  Failing to ensure that the health, safety and well-being of Plaintiff was being protected;

d.  Failing to supervise the football team;

e.  Failing to supervise Plaintiff;

    f.   Failing to protect Plaintiff;

    g.   Failing to control Upperclassmen;

    h.   Allowing an atmosphere that condoned, tolerated and encouraged hazing on the varsity football team;

    i.   Failing to prevent hazing, bullying, and intimidation on the football teams;

    j.   Breaching a statutory duty owed to Plaintiff;

    k.   Failing to exercise slight care regarding hazing on the varsity football team; and

    l.   Such other failures as shall become known through discovery.

92.    As a direct and proximate result of Defendants' gross negligence, Plaintiff has suffered damages as will be shown at trial, which include, but are not limited to:

    a.   Physical, emotional and psychological pain and suffering;

    b.   Mental anguish;

    c.   Fright and shock;

    d.   Denial of social pleasures and enjoyment;

    e.   Embarrassment, humiliation, and mortification;

    f.   Loss of enjoyment of life;

    g.   Economic damages, including, but not limited to medical and psychological care;

    h.   Other damages that may be revealed or discovered during the pendency of this litigation.

93.    As a result of Defendants' conduct, Plaintiff is entitled to an award of actual damages from a jury.

94.    Furthermore, Plaintiff is entitled to an award of punitive damages from a jury based upon the willful and wanton conduct of Defendants.

## CLAIM THREE
### (Intentional Infliction of Emotional Distress as to All Defendants)

95.    The allegations set forth in the paragraphs above are incorporated as if repeated herein verbatim.

96.    Defendants intentionally and/or recklessly inflicted severe emotional distress upon Plaintiff or Defendants were certain or substantially certain that such distress would result from their conduct.

97.    Defendants' conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community.

98.    Defendants' actions have caused Plaintiff to suffer emotional distress.

99.    The emotional distress that has been suffered by Plaintiff was so severe that no reasonable man could be expected to endure.

100.    As a direct and proximate result of Defendants' acts and/or omissions, Plaintiff has suffered damages as will be shown at trial, which include, but are not limited to:

        a.  Physical, emotional and psychological pain and suffering;

        b.  Mental anguish;

        c.  Fright and shock;

        d.  Denial of social pleasures and enjoyment;

        e.  Embarrassment, humiliation, and mortification;

f. Loss of enjoyment of life;

g. Economic damages, including, but not limited to medical and psychological care;

h. Other damages that may be revealed or discovered during the pendency of this litigation.

101. As a result of Defendants' conduct, Plaintiff is entitled to an award of actual damages from a jury.

102. Furthermore, Plaintiff is entitled to an award of punitive damages from a jury based upon the willful and wanton conduct of Defendants.

## CLAIM FOUR
**(Gross Negligence in Supervision as to the School District)**

103. The allegations set forth in the paragraphs above are incorporated as if repeated herein verbatim.

104. At all times relevant to this matter, the School Employees were upon the premises in possession of their employer, the School District.

105. The School District knew or should have known that it had the ability to control its employees.

106. Based upon the culture of hazing that the School Employees allowed to exist at Clover High School, the School District knew or should have known of the necessity and opportunity for exercising control over the School Employees.

107. The School District breached this duty to Plaintiff by failing to exercise the slightest degree of care in supervising the School Employees.

108. The School District owed Plaintiff a duty of care to properly train and supervise its employees.

0:12-cv-00569-CMC    Date Filed 02/28/12    Entry Number 1    Page 18 of 26

109.    As a direct and proximate result of the School District's acts and/or omissions, Plaintiff has suffered damages as will be shown at trial, which include, but are not limited to:

      a.  Physical, emotional and psychological pain and suffering;

      b.  Mental anguish;

      c.  Fright and shock;

      d.  Denial of social pleasures and enjoyment;

      e.  Embarrassment, humiliation, and mortification;

      f.  Loss of enjoyment of life;

      g.  Economic damages, including, but not limited to medical and psychological care;

      h.  Other damages that may be revealed or discovered during the pendency of this litigation.

110.    As a result of these Defendants' conduct, Plaintiff is entitled to an award of actual damages from a jury.

111.    Furthermore Plaintiff is entitled to an award of punitive damages from a jury based upon the willful and wanton conduct of these Defendants.

### CLAIM FIVE
**(Gross Negligence in Hiring as to the School District)**

112.    The allegations set forth in the paragraphs above are incorporated as if repeated herein verbatim.

113.    The School District knew or should have known about the School Employees propensity for condoning and/or allowing actions such as those of which Plaintiff complains and that they were incompetent and/or unfit for employment prior to hiring.

114.    The School District breached its duty of care by failing to exercise the slightest degree of care in hiring the School Employees who were incompetent, negligent, unfit, and dangerous and created an unreasonable risk of harm to others, including Plaintiff.

115.    As a direct and proximate result of the School District's acts and/or omissions, Plaintiff has suffered damages as will be shown at trial, which include, but are not limited to:

   a.   Physical, emotional and psychological pain and suffering;

   b.   Mental anguish;

   c.   Fright and shock;

   d.   Denial of social pleasures and enjoyment;

   e.   Embarrassment, humiliation, and mortification;

   f.   Loss of enjoyment of life;

   g.   Economic damages, including, but not limited to medical and psychological care;

   h.   Other damages that may be revealed or discovered during the pendency of this litigation.

116.    As a result of these Defendants' conduct, Plaintiff is entitled to an award of actual damages from a jury.

117.    Furthermore, Plaintiff is entitled to an award of punitive damages from a jury based upon the willful and wanton conduct of these Defendants.

**CLAIM SIX**
**(Gross Negligence in Retention as to the School District)**

118.    The allegations set forth in the paragraphs above are incorporated as if repeated herein verbatim.

119.    The School District knew or should have known about the School Employees propensity for allowing actions such as those of which Plaintiff complains and that they were incompetent and/or unfit for employment prior to hiring.

120.    The School District breached its duty of care by failing to exercise the slightest degree of care in retaining as employees the School Employees who were incompetent, negligent, unfit, and dangerous and created an unreasonable risk of harm to others, including the Plaintiff.

121.    As a direct and proximate result of the School District's acts and/or omissions, Plaintiff has suffered damages as will be shown at trial, which include, but are not limited to:

      a.   Physical, emotional and psychological pain and suffering;

      b.   Mental anguish;

      c.   Fright and shock;

      d.   Denial of social pleasures and enjoyment;

      e.   Embarrassment, humiliation, and mortification;

      f.   Loss of enjoyment of life;

      g.   Economic damages, including, but not limited to medical and psychological care;

      h.   Other damages that may be revealed or discovered during the pendency of this litigation.

122.    As a result of these Defendants' conduct, Plaintiff is entitled to an award of actual damages from a jury.

123.    Furthermore, Plaintiff is entitled to an award of punitive damages from a jury based upon the willful and wanton conduct of these Defendants.

## CLAIM SEVEN
### (Civil Conspiracy as to All Defendants)

124.    The allegations set forth in the paragraphs above are incorporated as if repeated herein verbatim.

125.    All Defendants in this matter have prior to the event, during the event, and subsequent to the event, acted in combination and concert for various purposes that they knew or should have known would cause injury to Plaintiff.

126.    As a direct and proximate result of the Defendants' acts and/or omissions, Plaintiff has suffered special damages as will be shown at trial, which include, but are not limited to:

a.   Physical, emotional and psychological pain and suffering;

b.   Mental anguish;

c.   Fright and shock;

d.   Denial of social pleasures and enjoyment;

e.   Embarrassment, humiliation, and mortification;

f.   Loss of enjoyment of life;

g.   Economic damages, including, but not limited to medical and psychological care;

h.   Other damages that may be revealed or discovered during the pendency of this litigation.

127.    As a result of Defendants' conduct, Plaintiff is entitled to an award of actual damages from a jury.

128.    Furthermore, Plaintiff is entitled to an award of punitive damages from a jury based upon the willful and wanton conduct of Defendants.

## CLAIM EIGHT
### (Violation of the S.C. Safe School Climate Act S.C. Code Ann. §59-63-110 et seq. as to School District and School Employees)

129.    The allegations set forth in the paragraphs above are incorporated as if repeated herein verbatim.

130.    School District had a duty to provide Plaintiff with a safe school climate.

131.    This duty is codified in S.C. Code Ann. §59-63-110 et seq.

132.    School Employees had a duty to provide Plaintiff with a safe school climate.

133.    This duty is codified in S.C. Code Ann. §59-63-110 et seq.

134.    School District and School Employees breached this duty to Plaintiff by failing to provide a safe school climate for him as stated above.

135.    As a direct and proximate result of the Defendants' acts and/or omissions, Plaintiff has suffered special damages as will be shown at trial, which include, but are not limited to:

        a.  Physical, emotional and psychological pain and suffering;

        b.  Mental anguish;

        c.  Fright and shock;

        d.  Denial of social pleasures and enjoyment;

        e.  Embarrassment, humiliation, and mortification;

        f.  Loss of enjoyment of life;

        g.  Economic damages, including, but not limited to medical and psychological care;

        h.  Other damages that may be revealed or discovered during the pendency of this litigation.

136.    As a result, Plaintiff is entitled to an award of actual damages from a jury.

137.    Furthermore, Plaintiff is entitled to an award of punitive damages from a jury based upon the willful and wanton conduct of these Defendants.

## CLAIM NINE
### (Assault as to the Defendant Upperclassmen)

138.    The allegations set forth in the paragraphs above are incorporated as if repeated herein verbatim.

139.    The Defendant Upperclassmen engaged in conduct that placed Plaintiff in reasonable fear of bodily harm.

140.    As a direct and proximate result of the breaches by the Upperclassmen Plaintiff has suffered actual and consequential damages, which include, but are not limited to, pain and suffering, medical bills, and future damages.

141.    Furthermore, Plaintiff is entitled to an award of punitive damages from a jury based upon the willful and wanton conduct of these Defendants.

## CLAIM TEN
### (Battery as to the Upperclassmen)

142.    The allegations set forth in the paragraphs above are incorporated as if repeated herein verbatim.

143.    Upperclassmen did inflict forcible contact upon Plaintiff.

144.    As a direct and proximate result of the conduct of Upperclassmen, Plaintiff has suffered actual and consequential damages, which include, but are not limited to, pain and suffering, medical bills, and future damages.

145.    Furthermore, Plaintiff is entitled to an award of punitive damages from a jury based upon the willful and wanton conduct of these Defendants.

## CLAIM ELEVEN
### (Negligence as to Upperclassmen)

146.   The allegations set forth in the paragraphs above are incorporated as if repeated herein verbatim.

147.   These Defendants owed a duty of care to Plaintiff.

148.   Defendants acted in concert and breached this duty of care to Plaintiff, by, *inter alia*, by causing him to be repeatedly struck in the head and body and by touching and striking Plaintiff with a broom-stick.

149.   As a direct and proximate result of Defendants' acts and/or omissions, Plaintiff has suffered damages as will be shown at trial, which include, but are not limited to:

        a.   Physical, emotional and psychological pain and suffering;

        b.   Mental anguish;

        c.   Fright and shock;

        d.   Denial of social pleasures and enjoyment;

        e.   Embarrassment, humiliation, and mortification;

        f.   Loss of enjoyment of life;

        g.   Economic damages, including, but not limited to medical and psychological care;

        h.   Other damages that may be revealed or discovered during the pendency of this litigation.

150.   As a result of the conduct of the Upperclassmen, Plaintiff is entitled to an award of actual damages from a jury.

151.   Furthermore, Plaintiff is entitled to an award of punitive damages from a jury based upon the willful and wanton conduct of Defendants.

## CLAIM TWELVE
### (Declaratory Judgment)

152.    The allegations set forth in the paragraphs above are incorporated as if repeated herein verbatim.

153.    Plaintiff seeks a declaratory judgment pursuant to 28 U.S.C. §2201 et seq. and Rule 57 of the Federal Rules of Civil Procedure, for the purposes of determining a question of actual controversy between the parties.

154.    There exists an actual dispute within the parties to this matter regarding the conduct of Defendants towards Plaintiff.

155.    A declaratory judgment defining the rights, privileges and duties of and between the parties is appropriate pursuant to 28 U.S.C. §2201 et seq.  It is specifically requested that the Court declare:

> a.  That School District and School Employees violated the South Carolina Safe Schools Climate Act;
>
> b.  That School District and School Employees violated Plaintiff's Constitutional rights;
>
> c.  That School District and School Employees violated S.C. Code Ann. §59-24-60.
>
> d.  That School District and School Employees allowed hazing to occur at Clover High School; and
>
> e.  That Plaintiff is entitled to damages due to Defendants' conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, based on his Complaint set forth above, respectfully requests that this Court enter judgment according to relief herein sought and prays for the following:  a

jury trial on all causes of action set forth herein to the fullest extent permitted by law; judgment entered in its favor and against Defendants on all causes of action; compensatory damages in an amount to be determined by a jury and sufficient to compensate Plaintiff fully for all damages incurred and will in the future incur; an award of punitive damages as determined by a jury in an amount sufficient to impress upon Defendants the seriousness of the misconduct and to deter similar egregious conduct in the future; a declaratory judgment in favor of Plaintiff; an award of prejudgment interest; and such other relief to which Plaintiff may be entitled as a matter of law or equity, or which this Court determines to be just and proper.

Respectfully submitted,


_____/s/ W. Jonathan Harling_____
Richard J. Breibart (Fed. I.D. No. 1462)
W. Jonathan Harling (Fed. I.D. No. 9291)
Shannon A. Davis (Fed. I.D. No. 10836)
LAW OFFICES OF RICHARD J. BREIBART, LLC
201 West Main Street
Post Office Box 310
Lexington, South Carolina 29071
Phone (803) 359-7996
Fax (803) 951-4619

ATTORNEYS FOR PLAINTIFF

Lexington, South Carolina
February 28, 2012